# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

CHRISTOPHER CROOM, )
)
Plaintiff, )
)
vs. )  Case No. 3:17 CV 633 DRH/RJD
)
UNKNOWN PARTY, et al., )
)
Defendants. )

## REPORT AND RECOMMENDATION

**DALY, Magistrate Judge:**

Before the Court is Plaintiff's Motion for Preliminary Injunction. (Doc. 11.) Plaintiff Christopher Croom is an inmate in the custody of the Illinois Department of Corrections at Menard Correctional Center. On June 9, 2017, Plaintiff commenced this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. (Docs. 1, 2.) On June 30, 2017, the Court screened the amended complaint, and Plaintiff now proceeds against Defendants Rodely and Lashbrook on an Eighth Amendment claim of deliberate indifference, alleging that Defendants failed to protect Plaintiff from his enemy, Marlon Brown, by failing to respond to his emergency grievance. (Doc. 13.)

On June 29, 2017, Plaintiff filed the instant motion for a preliminary injunction, seeking a transfer to another correctional facility. (Doc. 11.) On August 8, 2017, the Court held an evidentiary hearing on the motion. (Doc. 43.) Counsel for Defendants appeared at the evidentiary hearing and presented testimony, but Defendants did not submit a written response. For the following reasons, the undersigned recommends that the motion for preliminary injunction be denied.

# BACKGROUND

At the evidentiary hearing, Plaintiff testified as follows. Plaintiff considers Marlon Brown, a fellow inmate, to be his enemy because Marlon Brown murdered Plaintiff's best friend and Plaintiff was convicted for murdering an associate of Marlon Brown. Plaintiff arrived at Menard Correctional Center one year ago.

Plaintiff testified that, as of the end of 2016, Plaintiff lived in East House and Marlon Brown lived in West House. As Plaintiff was waiting to make a legal call, he asked an inmate who lived in West House about Marlon Brown. The inmate responded that Marlon Brown knew Plaintiff was at Menard Correctional Center and would "catch him in traffic," which Plaintiff understood to mean that Marlon Brown would initiate a physical altercation with Plaintiff. When Plaintiff was at the medical unit, he asked another inmate about Marlon Brown. The inmate responded that Marlon Brown knew that Plaintiff was at Menard Correctional Center.

Plaintiff testified that on March 14, 2017, he submitted an emergency grievance in which he described his relationship with Marlon Brown and requested a transfer. Defendants ignored the emergency grievance. Plaintiff has submitted a handwritten copy of the grievance with the Court; the copy is handwritten because he was not allowed to photocopy the grievance. Plaintiff's concern is that he does not want to be involved in an altercation because he would be sent to disciplinary segregation, which would frustrate his legal efforts. Plaintiff has added no one to his Keep-Separate-From list. He has not requested protective custody and has not discussed Marlon Brown with a correctional counselor. Plaintiff has only seen Marlon Brown from a distance and has never been housed in the same housing unit as Marlon Brown. He does not see Marlon Brown at mealtimes or on the recreational yard.

Jeanette Cowan also testified at the hearing. According to her testimony, Jeanette Cowan works as a clinical supervisor at Menard Correctional Center. She supervises grievance officers and correctional counselors. Inmates are informed at orientation that protective custody is available for inmates who receive threats of violence or are subject to gang pressure. An inmate may also add names to a Keep-Separate-From list, which is maintained in an inmate's file to notify correctional staff that an inmate should be kept separate from the inmates on the list. Additions to a Keep-Separate-From list must be verified to avoid manipulation by inmates. An emergency grievance is not an ideal way to add to a Keep-Separate-From list, and Jeanette Cowan was not aware that Plaintiff had enemies.

After reviewing housing records, Jeanette Cowan testified that Plaintiff has never been housed in the same housing unit as Marlon Brown. Plaintiff and Marlon Brown are not scheduled at the same time and place for recreational yard or mealtimes. For medical passes, contact between Plaintiff and Marlon Brown is possible but unlikely as the facility attempts to organize visits by cell house, and inmates are escorted by staff members.

## DISCUSSION

Plaintiff moves for a preliminary injunction, seeking a transfer to another correctional facility. "The purpose of preliminary injunctive relief is to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Platinum Home Mortg. Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722, 726 (7th Cir.1998). "In order to obtain a preliminary injunction, the moving party must show that: (1) they are reasonably likely to succeed on the merits; (2) no adequate remedy at law exists; (3) they will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the respondent will suffer if the injunction is granted; and

(4) the injunction will not harm the public interest." *Joelner v. Village of Washington Park, Illinois*, 378 F.3d 613, 619 (7th Cir. 2004).

The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment. U.S. Const., amend. VIII. Under this amendment, a duty is imposed on prison officials "to take reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833. "[I]n order to state a section 1983 claim against prison officials for failure to protect, [Plaintiff] must establish: (1) that he was incarcerated under conditions posing a substantial risk of serious harm and (2) that the defendants acted with deliberate indifference to his health or safety. *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010).

The undersigned finds that Plaintiff has not established irreparable harm. To date, the contact between Plaintiff and Marlon Brown has been minimal. Indeed, the "contact" between the two inmates at Menard Correctional Center consists of Plaintiff asking other inmates about Marlon Brown and Plaintiff observing Marlon Brown at a distance. Moreover, the record contains no evidence to suggest that Marlon Brown and Plaintiff are likely to be in the same place without supervision.

For the same reasons, the undersigned also finds that Plaintiff has not established that he is likely to succeed on the merits because he has not established a substantial risk of serious harm. Further, the record contains minimal evidence of Defendants' conduct and does not suggest that Defendants acted with deliberate indifference. The record sets forth Plaintiff's meager efforts to inform correctional staff of his concern: Plaintiff has not spoken to any

counselor regarding Marlon Brown, has not requested protective custody, has not asked about the Keep-Safe-From list, and has filed only a single grievance.

## **RECOMMENDATION**

Based on the foregoing, it is hereby RECOMMENDED that Plaintiff's Motion for Preliminary Injunction (Doc. 11) be DENIED.

**SO RECOMMENDED.**

**DATED: <u>October 3, 2017</u>**

*s/      Reona J. Daly*
UNITED STATES MAGISTRATE JUDGE