IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CHRISTOPHER CROOM,

Plaintiff,

v.

JACQUELINE LASHBROOK,
RODELY and JOHN BALDWIN,

Defendants.                                             No. 17-cv-0633-DRH

### MEMORANDUM and ORDER

**HERNDON, District Judge:**

### Introduction and Background

Pending before the Court is a March 7, 2018 Report and Recommendation ("the Report") issued by Magistrate Judge Reona J. Daly (Doc. 36). Magistrate Judge Daly recommends that the Court grant defendants' motion for summary judgment on the issue of exhaustion of administrative remedies and dismiss without prejudice plaintiff's claims for failure to exhaust. The parties were allowed time to file objections to the Report. On March 15, 2018, plaintiff filed an objection to the Report (Doc. 37). Based on the applicable law, the record and the following, the Court **ADOPTS** the Report in its entirety.

On June 9, 2017, plaintiff Christopher Croom brought this *pro se* action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983 at the Menard Correctional Center (Doc. 1). On June 30, 2017, the Court screened Croom's

amended complaint (Doc. 10) and construed it as a claim against defendants Counselor Rodely and Jacqueline Lashbrook on an Eighth Amendment claim of deliberate indifference as defendants failed to protect Croom from his enemy, Marlon Brown, by failing to respond to his emergency grievance (Doc. 13).[1] In addition to filing the amended complaint, Croom filed a motion for preliminary injunction (Doc. 11). Pursuant to 28 U.S.C. § 636(b)(1)(B), Magistrate Judge Daly submitted a Report and Recommendation on October 3, 2017 recommending that the Court deny Croom's motion for preliminary injunction (Doc. 26). On October 24, 2017, the Court adopted the Report and Recommendation and denied Croom's motion for preliminary injunction (Doc. 27).[2]

Thereafter, defendants filed a motion for summary judgment as to the issue of exhaustion of administrative remedies (Docs. 28 & 29). Specifically, defendants maintain that plaintiff failed to exhaust his administrative remedies as required because he did not forward his grievance to the Administrative Review Board within the appropriate timeframe as outlined in Department Rule 504. Further, defendants contend that plaintiff failed to identify any of the defendants in any hand written "grievance." On December 7, 2017, Croom filed his opposition (Doc. 31). Magistrate Judge Daly held a *Pavey*[3] hearing on the motion for

---

[1] The Court also directed the Clerk of the Court to add John Baldwin to the docket in his official capacity only as the Director of the IDOC for the purposes of injunctive relief (Doc. 13, p. 6).
[2] The Report and Recommendation found: "To date, the contact between Plaintiff and Marlon Brown has been minimal … Plaintiff has not established that he is likely to succeed on the merits because he has not established a substantial risk of serious harm." (Doc. 26, pg. 4).
[3] *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)(indicating that a judge, not a jury should resolve initial disputes about exhaustion in prisoner cases, and setting forth the procedures to be followed

summary judgment and to assess the credibility of the conflicting accounts about Croom's use of the grievance process on March 1, 2018 (Doc. 34) and on March 7, 2018 issued a Report and Recommendation ("the Report") recommending that the Court grant the motion for summary judgment for failure to exhaust and dismiss without prejudice plaintiff's claims (Doc. 36). Croom filed objections to the Report on March 15, 2018 (Doc. 37).

## Facts

The facts set forth in this section are limited to those necessary for this Court to review the Report. A more comprehensive recitation of the facts are contained in the Report (Doc. 36). Croom claims that he is in fear of his safety because an enemy of his Marlon Brown is also housed at Mendard.[4] He claims that he submitted a February 23, 2017 grievance to Counselor Rodley on March 14, 207 (1 of 7 grievances submitted on that date) by handing an envelope with the grievances to C/O Tudor. Defendants maintain that this grievance was not received by prison staff. The Administrative Review Board received a handwritten note from Croom on March 23, 2017. In the note, Croom complained that he sent 7 grievances but had not received any responses. Also, the note to the Administrative Review Board stated that Croom has an enemy at Menard who killed his best friend, that Croom is in custody for allegedly murdering an associate of that enemy and that he

---

in doing so).
4 The Court notes that an Illinois inmate offender locator search conducted on April 5, 2018 reveals that Marlon Brown is now being housed at Hill Correctional Center.

fears for his life when their paths cross. On April 7, 2017, Sarah Johnson of the Administrative Review Board responded to Croom stating that he should follow the proper grievance procedure. Croom filed a grievance dated August 11, 2017 which was exhausted *after* this lawsuit was filed on June 9, 2017.

## **Legal Standards**

The Court's review of the Report is governed by 28 U.S.C. § 636(b)(1), which provides in part:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b) also directs that the Court must only make a *de novo* determination of those portions of the report and recommendation to which specific written objection has been made. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). If no objection or only a partial objection is made, the Court reviews those unobjected portions for clear error. *Id*. In addition, failure to file objections with the district court "waives appellate review of both factual and legal questions." *Id*. Under the clear error standard, the Court can only overturn a Magistrate Judge's ruling if the Court is left with "the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997).

"The court shall grant summary judgment if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Whether a fact is material depends on the underlying substantive law that governs the dispute. *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012) (citation omitted).

Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). The PLRA provides:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*, 182 F.3d 532, 534-535 (7th Cir. 1999) (stating that § 1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the

issues on the merits)." *Id.* at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating." *Id.*

In *Pavey*, the Seventh Circuit instructed district courts to conduct a hearing where "exhaustion is contested" to determine whether a plaintiff has exhausted his administrative remedies. *Pavey*, 544 F.3d at 742. And in holding that hearing, a court may credit the testimony of one witness over another. *See Pavey v. Conley (Pavey II)*, 663 F.3d 899, 904 (7th Cir. 2011)(affirming factual findings of a magistrate judge, whose Report included factual findings that the plaintiff was not credible). In other words, and unlike other summary judgment motions, the very purpose of *Pavey* is to allow a judge to resolve swearing contests between litigants. So while courts typically undertakes *de novo* review of the portions of the Report to which a party objects, the courts will give great deference to factual findings and credibility determinations made in the Report. *Pavey II*, 663 F.3d at 904. *See also Towns v. Holton*, 346 Fed.Appx 97, 100 (7th Cir. 2009)(great deference to credibility findings based on demeanor); *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995)("*De novo* determination is not the same as

a *de novo* hearing. The district court is not required to conduct another hearing to review the magistrate judge's findings or credibility determinations).

Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, *Pavey* set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent of prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any findings made by the district judge in determining that the prisoner exhausted his administrative remedies.

*Id.* at 742.

A. Illinois Exhaustion Requirements

As an inmate confined within the Illinois Department of Corrections, Plaintiff was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. 20 Ill. Administrative Code §504.800 *et seq*. The grievance procedures first require inmates to speak with the counselor about their

complaint. 20 Ill. Admin. Code §504.810(a). Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident. *Id.* The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(a)(b). "The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer…[who]shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." 20 Ill. Admin. Code §504.830(d). If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB"). The grievance procedures specifically state, "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." 20 Ill. Admin. Code §504.850(a). "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code §504.850(e). "The Director shall review the findings and

recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(f).

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 Ill. Admin. Code §504.840(a). If an inmate forwards the grievance to the CAO as an emergency grievance, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance. 20 Ill. Admin. Code §504.840(b). Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis. 20 Ill. Admin. Code §504.850(g).

## Analysis

Here, Croom's objections to the Report largely reiterate things he already argued in his response to summary judgment (See Docs. 31 & 37). He merely takes umbrage with the Report's findings and conclusions of law. In addition to his previous arguments, Croom also takes issue with the Report's characterization of his testimony as inconsistent. The Court finds no error or deficiency in Judge

Daly's credibility determination. Judge Daly provided a sound analysis of the testimony and bolstered her reasoning by reference to the record. Specifically, Judge Daly concluded:

> "In his Response to the motion for summary judgment, Croom argued he exhausted his administrative remedies through a grievance filed on August 11, 2017. At the hearing, Croom abandoned this argument and argued that the grievance filed on February 23, 2017 fully exhausted his administrative remedies. Plaintiff testified that he did in fact mail the grievance form dated February 23, 2017 to Counselor Rodley on March 14, 2017, and that when he did not receive a response by March 20, 2017, he forwarded the copies directly to the ARB. The ARB responded to Croom's submissions and told him he needed to follow proper procedure. Croom testified that he took no further action regarding his February 23, 2017 grievance after he received the ARB's response. Plaintiff filed the present lawsuit on June 14, 2017 and then filed a new grievance dated August 11, 2017, which re-states the exact content that was allegedly included in the February 23, 2017 grievance. The August 11, 2017 grievance was then fully exhausted with the ARB. The August 11, 2017 grievance was filed after the initiation of this case and is not evidence that and is not evidence that Plaintiff exhausted his administrative remedies prior to filing suit. Based on the inconsistencies of Plaintiff's arguments, the Court does not find credible Croom's testimony that he attempted to file the grievance dated February 23, 2017 on March 2017. The fact that Plaintiff thought it necessary to file the August 11, 2017 grievance weighs against his argument that he already exhausted his administrative remedies in March. There is no credible evidence the February 23, 2017 grievance was filed with staff at Menard prior to this suit being filed."

(Doc. 36, pgs. 5-7).

Judge Daly found Croom to be not credible and his testimony inconsistent. The record before the Court provides no reason for the Court to doubt Judge Daly's determination. Based on the record, it is clear to the Court that Croom did not exhaust his administrative remedies prior to filing this lawsuit. In addition, as the

Judge Daly noted, the February 23, 2017 grievance concerned Croom's fear of his enemy Marlon Brown and that he wanted to be transferred; it did not address defendants' failure to respond.

## Conclusion

Accordingly, the Court **ADOPTS** the Report in its entirety (Doc. 36) and **GRANTS** defendants' motion for summary judgment on the issue of exhaustion of administrative remedies (Doc. 28). The Court **DISMISSES** without prejudice Croom's claims against defendant for failure to exhaust administrative remedies. Further, the Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same.

IT IS SO ORDERED.

Judge Herndon
2018.04.05
15:25:13 -05'00'

**United States District Judge**